NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOUG BRADY, INC., | Hon. Harold A. Ackerman |
| Plaintiff, | Civil Action No. 07-5122 (HAA) |
| v. | **OPINION & ORDER** |
| NEW JERSEY BUILDING LABORERS STATEWIDE FUNDS, NEW JERSEY STATE POLITICAL ACTION COMMITTEE, LABORERS' EAST REGION ORGANIZING FUND, and JOHN DOES 1-10, | |
| Defendants. | |

Stephen E. Trimboli, Esq.
Lauren M. Walter, Esq.
LAUFER, KNAPP, TORZESKI & DALENA
23 Cattano Avenue
Morristown, New Jersey 07960
*Attorneys for Plaintiff*

Vincent M. Giblin, Esq.
KROLL HEINEMAN GIBLIN, LLC
99 Wood Avenue South
Suite 307
Iselin, New Jersey 08830
*Attorneys for Defendants*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on four motions by Plaintiff and Defendants. Specifically, Plaintiff Doug Brady, Inc. ("Brady") seeks a preliminary injunction against all Defendants, enjoining them from enforcing an arbitration award against Brady, and also

enjoining Defendants from pursuing further contributions to an employee benefits fund. Brady also seeks default judgment against Defendant New Jersey State Political Action Committee ("NJSPAC") and Defendant Laborers' East Region Organizing Fund ("LEROF") for failing to timely file an Answer to Brady's Complaint. Relatedly, Defendants NJSPAC and LEROF have filed a motion seeking to file their Answer out of time. In addition, all Defendants have filed a motion to consolidate this action, No. 07-5122, with a related action currently pending before Judge Martini, No. 08-256. For the following reasons, Brady's motions will be denied and Defendants' motions will be granted.

## I.     Factual and Procedural Background

Brady is a New Jersey corporation whose primary work involves excavation services for construction sites. Defendant New Jersey Building Laborers' Statewide Funds (the "Fund") is an employee benefits fund for Local Union #593. Defendant NJSPAC is the political action committee for the New Jersey Building Laborers' Local Unions and District Councils. Defendant LEROF is an organizing fund that is funded by dues collected by the New Jersey Building Laborers' Local Unions and District Councils.

On or about September 9, 2003, Brady was retained to perform a specific project for which it was necessary to employ union workers. Brady discussed the issue with the president of Building Laborers' Local #593, Carmen Perry, who suggested that Brady hire one or two union workers for the project. Brady agreed, and Perry then prepared a "Short Form Agreement" with the Building Laborers' Union, which reads in full:

> The undersigned Employer, desiring to employ laborers from the New

> Jersey Building Laborer Local Unions and District Councils affiliated with the Laborers' International Union of North America, hereinafter the 'Unions,' and being further desirous of building, developing and maintaining a harmonious working relationship between the undersigned Employer and the said Unions in which the rights of both parties are recognized and respected, and the work accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties, and the Unions desiring to fulfill the undersigned Employer's requirements for construction craft laborers, <u>the undersigned Employer and Unions hereby agree to be bound by the terms and conditions as set forth in the 2002-07 Building, Site and General Construction Agreement, which Agreement is incorporated herein as if set forth in full.</u>

(Compl. Ex. A (emphasis added).) Below the agreement is the date September 9, 2003 and the signatures of Doug Brady and Carmen Perry on behalf of their respective organizations. Brady, however, alleges that "no copy of the Main Agreement was ever produced or sent to [it]." (Compl. ¶ 23.) In its Complaint, Brady characterizes the Short Form Agreement as a "pre-hire agreement," and alleges that "whenever [] Brady worked on a project that required union labor, he would hire union workers . . . . The union workers so hired, and only those workers, would be covered by the New Jersey Building Laborers' Local Unions and District Council labor contract then in effect." (Compl. ¶ 16.) Brady's Complaint further alleges that "[n]o other employees of [] Brady would be covered under the New Jersey Building Laborers' Local Unions and District Council labor contract." (*Id.*) The Complaint also alleges that "Perry represented to Doug Brady that the Short Form Agreement was limited in the manner described in the preceding paragraph[, and Brady] relied on this representation, and upon [the] personal knowledge of Perry's trustworthiness and honesty." (*Id*. ¶ 17.)

Subsequent to signing the Short Form Agreement, Brady hired one union laborer to work on four projects between June 2004 and August 2005. Brady alleges that it paid all

compensation and benefits for which this one laborer was entitled under the New Jersey Building Laborers' Local Unions and District Council labor contract. Furthermore, Brady paid all applicable Fund contributions on behalf of the one laborer.

In March 2007, an attorney for the Fund sent Brady a letter advising it that Brady owed a total of $675,294.31 in "Fringe Benefit Monies" for the time between January 1, 2003 and December 31, 2005. These dues were allegedly assessed based upon every employee of Brady, not just the one union laborer. Brady then retained counsel, and an arbitration was scheduled, but postponed twice. In August 2007, the Fund's counsel issued a revised finding stating that Brady owed $228,100.98 for the same January 2003 to December 2005 time period. Again, this figure was allegedly assessed based on every Brady employee. It is not clear to the Court why the figure was so dramatically reduced from the previous assessment.

An arbitration was held on September 27, 2007, at which Brady appeared on the record, but declined to participate "based on lack of jurisdiction." (Compl. ¶ 34.) "Brady specifically denied the existence of any contractual agreement obligating it to make any contributions to the Fund." (*Id.*) On December 16, 2007, the arbitrator "rendered a decision in favor of the Funds in the amount of $378,038.22 for lost contributions suffered by the Funds through [Brady's] failure to apply the collective bargaining agreement at numerous work-sites between May 2003 and December 2005." (Fund Br. at 4.) On January 11, 2008, Defendants in the present action filed a separate action, namely a petition to confirm the arbitration award. That action was assigned to Judge Martini under Civil Action No. 08-256.

On October 24, 2007, after the arbitration hearing, but before the final decision, Brady filed the instant four-count Complaint. Count One seeks a declaratory judgment that Brady is not

4

a party to any collective bargaining agreement ("CBA") and that Brady is not obligated to make any contributions to Defendants or participate in arbitration. Count Two seeks both preliminary and permanent injunctions against Defendants, restraining them from compelling Brady to (1) engage in arbitration; (2) pay contributions; and (3) allow audit access to Brady's books and records. Count Three seeks "a declaratory judgment finding that Defendants are estopped from pursuing any claim for unpaid contributions by the Plaintiff arising out of any [CBA]." (Compl. Count III.) Finally, Count Four seeks a declaratory judgment finding that Defendants' attempt to collect on unpaid contributions or enforce the Short Form Agreement is unconscionable; and further seeks a preliminary and permanent injunction, enjoining Defendants from seeking to enforce any agreement or collecting contributions.

On December 27, 2007, Brady filed the instant motion for a preliminary injunction. In this motion, Brady seeks to enjoin "Defendants from attempting to enforce any alleged [CBA] to which . . . [Brady] is allegedly a party, from attempting to compel [Brady] to pay allegedly delinquent contributions under the terms of any such [CBA], and from attempting to force [Brady] to comply with the Arbitration Award." (Brady Br. at 3.) By way of this same motion, Brady also seeks a default judgment against Defendants NJSPAC and LEROF. In addition, Defendants have filed a motion to file Answers out of time, and to consolidate this action with the later filed, No. 08-256, action presently before Judge Martini.

## II. Analysis

### A. Motion for a Preliminary Injunction

A preliminary injunction "is 'an extraordinary remedy' and 'should be granted only in

limited circumstances.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). Four factors must be satisfied for a preliminary injunction to issue: the movant must show (1) "a reasonable probability of success on the merits"; (2) that "the movant will be irreparably injured by denial of the relief"; (3) that "granting preliminary relief will result in even greater harm to the nonmoving party"; and (4) that "granting the preliminary relief will be in the public interest." *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999). "All four factors should favor preliminary relief before the injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992). It has been stated often that a court considering a motion for a preliminary injunction must adhere faithfully to the aphorism that "to doubt is to deny." *Bateman v. Ford Motor Co.*, 310 F.2d 805, 808 (3d Cir. 1962) (quoting *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3rd Cir. 1937)).

An applicant for a preliminary injunction "need only prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). "The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits." *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). "A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In support of its motion for a preliminary injunction, Brady makes two primary arguments regarding its likelihood of success on the merits. First, Brady contends that it entered into a "pre-hire agreement" that allegedly does not require contributions for *all* of its employees, but only

6

those union employees it hires for the specific projects.  Second, Brady contends that when it signed the Short Form Agreement, it did not know it was entering into a broad CBA.  Somewhat related to that second argument, Brady also contends that the Short Form Agreement does not require, by its express terms, that contributions be paid on behalf of any employees.  The Court will address each argument in turn.

With regard to the first argument, Brady equates the Short Form Agreement with a "pre-hire agreement," which is a form of agreement authorized by the National Labor Relations Act.  Specifically, Brady asserts that the Short Form Agreement, as a pre-hire agreement, meant that the agreement would apply "only to union workers hired by Mr. Brady from the union hiring halls, and would not apply to any other of Plaintiff's employees."  (Brady Br. at 11.)

In *Buckeye Check Cashing, Inc. v. Cardegna*, our Supreme Court explained that there are essentially two types of challenges to agreements containing an arbitration clause.  546 U.S. 440, 444 (2006).  One type specifically challenges the arbitration clause itself, whereas the other type challenges the contract as a whole.  For challenges to the validity of the arbitration clause itself, a federal court may consider such questions of validity.  *Id.*  However, for challenges to the contract as a whole, or other provisions therein, the arbitrator, not the court, should consider such challenges.  *Id.*

The bulk of Brady's argument regarding the pre-hire agreement versus Short Form Agreement is centered on provisions not related to the arbitration clause.  That is, Brady essentially argues that the Short Form Agreement means something different than what it expressly says, and also something different than what the CBA, which was incorporated into the Short Form, expressly says.  For example, in its Complaint, Brady insists that it "is not and has

not been a party to any collective bargaining agreement or contract with any union or any Defendant other than the Short Form Agreement that was executed on September 9, 2003.  Doug Brady is not party to any contract with any union or any Defendant obligating Doug Brady to engage in arbitration in any forum." (Compl. ¶ 35.)  Such arguments, according to *Buckeye*, are properly reserved for the arbitrator because they are focused on contract interpretation generally, rather than the arbitration clause specifically.  It is unfortunate for Brady that it did not understand clear Supreme Court precedent well enough to know that sitting in the arbitration and obstinately refusing to present a case was not a path to success in the federal courts.

To its credit, Brady does attempt to place this case within the context of a different Supreme Court case, namely *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1983).  That case did hold that the federal district court should decide the contract interpretation issue, but only because the issue was whether there existed an *express exclusion* from the otherwise applicable arbitration clause.  *Id*. at 652.  Such is not the case here, and thus *AT&T* is inapposite to the facts before the Court at this time.

The Court now turns to Brady's second primary argument, that it did not know that it was entering into a broad CBA when it signed the Short Form Agreement.  This too is a challenge to the validity of the entire contract, and therefore should have been presented to the arbitrator.  Moreover, it is inexplicable how Brady could not understand that it was entering into the CBA when it signed the Short Form Agreement.  The Short Form Agreement uses the term "agree" only once and that is in the crucial final clauses: "the undersigned Employer and Unions hereby agree to be bound by the terms and conditions as set forth in the 2002-07 Building, Site and General Construction Agreement, which Agreement is incorporated herein as if set forth in full."

8

(Compl. Ex. A.). Without this language, the Short Form Agreement is devoid of any agreement whatsoever. Thus, it makes little sense for Brady to argue that it did not know it was entering the broad CBA.

Relatedly, Brady's argument that the Short Form Agreement does not, by its express terms, require contributions on behalf of employees is technically true, but legally nonsensical. The incorporation of the CBA into the language of the Short Form Agreement renders the language in the former part of the latter. That Brady did not read the CBA before signing the Short Form Agreement does not relieve it of liability assumed thereunder.

In sum, Brady has failed to establish a reasonable likelihood of success on the merits. As the most critical element to any consideration of such a motion, Brady's failure to satisfy this element is ultimately fatal to its motion for a preliminary injunction. The remaining preliminary injunction elements–irreparable harm, balance of hardships, public interest–all weigh in favor of Defendants. Accordingly, the Court will deny Brady's motion for a preliminary injunction.

### B.     Motion to Consolidate

As previously mentioned, the defendants in this case are the plaintiffs in a separately filed action, No. 08-256, before Judge Martini. Although Defendants filed that separate action, seeking to confirm the arbitration award, they now seek to consolidate the two into one action before this Court. Brady has filed an opposition to this motion to consolidate.

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: . . . (2) consolidate the actions." Thus, a threshold requirement for consolidation is whether there exists a common question of law or fact.

*See In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998). While the existence of common issues is a prerequisite for consolidation, their mere presence does not compel consolidation. *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 80 (D.N.J. 1993). Rather, a court may consolidate cases if, in its discretion, "consolidation would facilitate the administration of justice." *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991).

A district court has "broad powers" when determining whether consolidation is appropriate. *See Liberty Lincoln Mercury,* 149 F.R.D. at 80. When exercising this discretion, a court should weigh the benefits of judicial economy against the potential for new delays, expense, confusion or prejudice. *Id.* A motion to consolidate may be denied if the common issue is not a principal one, if it will cause delay in one of the cases, or will lead to confusion or prejudice in the trial of a case. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2382 (Civil 2d. 1995). "Where the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues." *Liberty Lincoln Mercury, Inc.*, 149 F.R.D. at 81.

Brady, in its opposition to consolidate, insists that the two actions are "legally and factually distinct." (Brady Br. in Opp. to Consolidation at 12.) Of course, nothing could be further from the truth. Indeed, the very goal of Brady's motion for a preliminary injunction in the instant matter is to prevent the action before Judge Martini from going forward. Thus, in essence, Brady argues in its motion for a preliminary injunction that the arbitration award before Judge Martini must not be confirmed because there is a factual and legal dispute about the validity of that award, but then Brady argues in opposition to the motion to consolidate that the

factual and legal dispute before Judge Martini has nothing to do with the case before this Court. Such blatant contradictions are irreconcilable. Indeed, if Brady ultimately prevails on the merits in the case currently before this Court, then it would effectively negate the arbitration award that the instant defendants seek to confirm as plaintiffs before Judge Martini. Therefore, in the interest of judicial economy, to facilitate the administration of justice, and in the exercise of this Court's discretion, the Court will grant the motion to consolidate No. 08-256 with the instant action, No. 07-5122.

### C.    Motion to File Late Answer

In conjunction with its motion to consolidate, Defendants NJSPAC and LEROF also have filed a motion requesting permission to file an Answer to the Complaint, even though the time for doing so has passed. Notably, all three Defendants–Fund, NJSPAC, and LEROF–are represented by the same counsel. Apparently, Defendant Fund was served with a copy of the Complaint several days after Defendants NJSPAC and LEROF, which resulted in defense counsel believing the time to answer for NJSPAC and LEROF was later than the twenty day deadline prescribed under the Federal Rules of Civil Procedure. Thus, the identical Answer of Defendants NJSPAC and LEROF was filed along with the Answer for Defendant Fund, but only Fund's Answer was timely. In an order dated January 4, 2008, Magistrate Judge Salas directed the tardy Defendants to file a motion for an extension of time in which to file their Answer.

Pursuant to Federal Rule of Civil Procedure 6(b), the Court may, for good cause, extend the time to answer a Complaint if excusable neglect is shown. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable'

neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Services Co. v. Brunswick Assoc. LP*, 507 U.S. 380, 392 (1993). As for the elasticity of what constitutes excusable neglect, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. A non-exclusive list of relevant circumstances includes "the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*.

On balance, these factors all weigh in favor of allowing Defendants to file a late Answer. For example, the danger of prejudice is very minor considering the fact that Defendants sought to file the late Answer within only a few days of its original due date. Furthermore, there is no indication that Defendants acted in bad faith. Instead, everything suggests that Defendants, as soon as they realized the error, sought to remedy the problem. Defendants even sought Brady's consent to file a few days late, but when denied that courtesy, resorted to expeditiously resolving the problem with the Court. Because the Court finds that Defendants acted with excusable neglect, the Court will allow Defendants NJSPAC and LEROF to file their Answer late.

### D.      Motion for Default Judgment

As previously mentioned, Brady also has filed a motion for default judgment against Defendants NJSPAC and LEROF for failing to timely file an Answer to the Complaint. Federal Rule of Civil Procedure 55 governs default. Fed. R. Civ. P. 55. Pursuant to Rule 55(a), a

plaintiff can request the clerk's entry of default against a party "against whom a judgment for affirmative relief is sought [that] has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed. R. Civ. P. 55(a). Thereafter, the plaintiff may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2). *Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521, n.1 (3d. Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a).").

Before imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) ("[W]e have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment"). In weighing these factors, district courts must remain mindful that, like dismissal with prejudice, default is a sanction of last resort. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984) ("We reiterate what we have said on numerous occasions: that dismissals with prejudice or defaults are drastic sanctions"). To this end, district courts must resolve all doubt in favor of proceeding on the merits. *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987).

In the instant matter, Brady moves for default judgment against Defendants NJSPAC and LEROF on the ground that these two defendants failed to timely file an Answer to Brady's Complaint. As previously discussed, however, the Court is allowing Defendants NJSPAC and

13

LEROF to file a late Answer.  Thus, there is no justifiable reason to rush to the extreme sanction of default in a case such as this where the filing of an Answer was but a few days late, and such filing was not coupled with any bad faith on the part of Defendants.  Moreover, there is strong reason to believe that all Defendants have the same defense to Brady's instant Complaint and that their collective defense is one with considerable merit.  For these reasons, the Court will deny Brady's motion for default judgment.

### III.   Conclusion & Order

For the foregoing reasons, it is hereby ORDERED that:

1. Plaintiff Brady's motion for a preliminary injunction (Doc. No. 14) is DENIED.
2. Plaintiff Brady's motion for default judgment (Doc. No. 14) is DENIED.
3. Defendants NJSPAC and LEROF's motion to file a late Answer (Doc. No. 24) is GRANTED.
4. Defendants Fund, NJSPAC and LEROF's motion to consolidate (Doc. No. 24) Civil Action 08-256 with this Civil Action 07-5122 is GRANTED.

Newark, New Jersey
Dated: April 7, 2008

s/ Harold A. Ackerman
U.S.D.J.