NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOUG BRADY, INC., | Hon. Harold A. Ackerman |
| Plaintiff, | Civil Action No. 07-5122 (HAA) |
| v. | **OPINION & ORDER** |
| NEW JERSEY BUILDING LABORERS STATEWIDE FUNDS, NEW JERSEY STATE POLITICAL ACTION COMMITTEE, LABORERS' EAST REGION ORGANIZING FUND, and JOHN DOES 1-10, | |
| Defendants. | |
| NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFIT FUNDS AND THE TRUSTEES THEREOF, | |
| Plaintiffs. | |
| v. | |
| DOUG BRADY, INC. | |
| Defendant. | |

**ACKERMAN**, Senior District Judge:

This matter comes before the Court on Defendants' motion (filed prior to consolidation in Civil No. 08-256, Doc. No. 2) to confirm the arbitration award issued on December 16, 2007. In lieu of opposing Defendants' motion, Plaintiff has filed a motion (Doc. No. 33) for reconsideration of this Court's April 7, 2008 Order ("April 7 Order") denying injunctive relief that would have prohibited confirmation of the arbitration award. Because the April 7 Order

consolidated both cases, thus obviating the need for injunctive relief, this Court will treat the arguments advanced in Plaintiff's motion for reconsideration as a motion to vacate the arbitration award. For the following reasons, the Court will deny Plaintiff's motion and confirm the arbitration award.

## I.     BACKGROUND

This matter involves a contract for union labor entered into by Plaintiff Doug Brady Inc. ("Brady") and the New Jersey-based Building Laborers' Union ("Union") on September 9, 2003. In 2005, a dispute arose regarding whether the Short Form Agreement signed by the parties required Plaintiff to make contributions to the New Jersey Building Laborers' Statewide Funds (the "Fund") for Plaintiff's non-union employees. The Short Form Agreement expressly incorporated a collective bargaining agreement (CBA) that required contributions to the Fund for employees covered by the CBA and provided for arbitration in the event of a contract dispute.[1]

Notwithstanding the plain terms of the CBA, which Brady claims to have never received from the Union, Brady contends that he signed the Short Form Agreement on the basis of the Union's representations that the CBA's fund contribution requirements only applied to union labor hired by Brady. When the union sought contributions for all of Brady's employees under the CBA, Brady objected that it had never assented to such a CBA. Pursuant to the terms of the CBA, the Fund initiated an arbitration hearing in September of 2007. Brady appeared at the

---

[1] The Short Form Agreement signed by Plaintiff states that "the undersigned Employer and Unions hereby agree to be bound by the terms and conditions set forth in the 2002–07 Building, Site and General Construction Agreement, which Agreement is incorporated herein as if set forth in full." (Compl. Ex. A.) Provision 2.20 of Article II of the CBA provides for binding arbitration in the event of a dispute between the employer and the union. (Compl. Ex. B at 17.) Article XIV generally outlines the employer's obligation to make contributions to the Fund for employees covered by the CBA.

hearing but declined to participate, arguing that the arbitrator lacked jurisdiction because the parties had not finalized an arbitration agreement. In the aftermath of the arbitration hearing, Brady and the Fund successively filed separate complaints to enforce and prevent enforcement of the arbitration award, respectively. Arbitration concluded on December 16, 2007 with an award for the Fund in the amount of $378,038.22.

The April 7 Order consolidated the separate actions before this Court and denied Brady's motion for a preliminary injunction without addressing the Fund's newly consolidated motion to confirm the arbitration award. In denying the preliminary injunction, the Court relied upon the Supreme Court's holding in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006), that federal law mandated arbitration for contract disputes not limited to the validity of the arbitration clause. The Court construed Plaintiff's arguments as broad objections to the validity of the Short Form Agreement as a whole, an argument that, according to *Buckeye Check Cashing*, had to be heard by the arbitrator rather than a court under the Federal Arbitration Act. Given the nature of the contract arguments, the Court found Plaintiff unable to demonstrate the reasonable likelihood of success on the merits necessary for a preliminary injunction.

Plaintiff now seeks reconsideration of the April 7 Order on the grounds that the Court failed to comprehend Plaintiff's initial contract argument. Rather than challenging the validity of the contract, Plaintiff contends that "no enforceable agreement between [Plaintiff] and Defendants, calling either for pension contributions or arbitration pertaining to Plaintiff's employees, was ever concluded . . . ." (Pl.'s Br. at 8.) Such an argument, according to Plaintiff, requires a judicial determination of whether or not the contract existed. In the absence of a valid contract providing for arbitration, the arbitrator would lack jurisdiction over the matter, and the

3

arbitration award would be invalid. Other than Plaintiff's motions in support of its claim for injunctive relief, Plaintiff has not opposed Defendant's motion to confirm the arbitration award.

## II. ARBITRABILITY

The Federal Arbitration Act (FAA) governs all contracts, like the Short Form Agreement here, that involve commerce and include an agreement between the parties to arbitrate disputes arising from the contract. 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ."). Congress enacted the FAA "[t]o overcome judicial resistance to arbitration" and "place[] arbitration agreements on equal footing with all other contracts . . . ." *Buckeye Check Cashing*, 546 U.S. at 443. Thus, the FAA reflects "a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000).

Under the FAA, there are two types of challenges to the validity of an arbitration agreement: "One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . , or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing*, 546 U.S. at 444 (citation omitted). Because arbitration provisions are severable under federal law, only narrow challenges to the arbitration provisions may be considered by the courts in the first instance; all other challenges to contracts containing arbitration agreements must first be considered by the arbitrator. *Id.* at 445–46 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967); *Southland Corp. v. Keating*, 465 U.S. 1 (1984)).

4

As this Court noted in its April 7 Order, Plaintiff's objection to the overall scope of the CBA—whether the fund contribution provisions applied to non-union employees—presents the sort of broad challenge to the contract as a whole that *Buckeye Cash Checking* held must be submitted to the arbitrator, not the court. (April 7 Order at 8.) On motion for reconsideration, which this Court construes as a motion to vacate the arbitration award, Plaintiff asserts that this Court misunderstood its argument and erred by failing to determine the threshold issue of whether an agreement to arbitrate exists. Indeed, pre-*Buckeye Cash Checking* Third Circuit precedent does require district courts to "decide whether an agreement to arbitrate exists before [ordering] arbitration." *Sandvik*, 220 F.3d at 107. Towards this end, the Third Circuit "dr[ew] a distinction between contracts that are asserted to be 'void' or non-existent . . . and those that are merely 'voidable' . . . for purposes of evaluating whether the making of an arbitration agreement is in dispute." *Id.* at 107. Consequently, *Sandvik* held that challenges asserting that the underlying contract is *void* due to fraud in the execution, as opposed to *voidable* due to fraud in the inducement, must first be determined by the court. *Id.* at 107, 109–10.

This Court is not persuaded to vacate the arbitration award for two reasons. First, *Buckeye Check Cashing* appears to have displaced the *Sandvik* void/voidable distinction regarding which contract disputes must be determined by courts. Second, even if *Sandvik* remains good law, Plaintiff fails to present a valid fraud in the execution argument that the Short Form Agreement was void. For these reasons, this Court will deny Plaintiff's motion for reconsideration.

### A. "Void" Arguments Must Go to Arbitrator Under Buckeye Check Cashing

The Supreme Court in *Buckeye Check Cashing* specifically rejected the argument that the

5

FAA does not apply to void contracts. *Buckeye Check Cashing*, 546 U.S. at 448.  Respondents in that case had opposed arbitration on the grounds that the contract was void for illegality, arguing that contract provisions contravened Florida law.  Such violations, according to respondents, rendered the contract "void *ab initio*," or void from the beginning, and, hence, not an actual "contract" for purposes of the FAA.  The Supreme Court disagreed, concluding that the term "contract" in § 2 of the FAA included "putative contracts," or contracts later determined to be void.  *Id.* at 447–48 ("There can be no doubt that [the FAA applies] to contracts that later prove to be void.").  The Court ruled that Respondents' void-for-illegality argument, like other contractual objections not limited to the arbitration clause, had to be submitted to the arbitrator rather than the court.  *Id.* at 446.  Based on this reasoning, it would appear that the FAA reserves other "void" arguments, such as fraud in the execution, for arbitration rather than adjudication, so long as the arbitration clause itself is not the crux of the dispute.  After all, like fraud-for-illegality, "[f]raud in the execution results in the agreement being void *ab initio* . . . ." *Sandvik*, 220 F.3d at 110 (quoting *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986) (citation omitted)).

      Yet, the *Buckeye Check Cashing* Court qualified its holding in a footnote, noting that its decision did not address "the issue of whether any agreement between the alleged obligor and obligee was ever concluded." *Id.* at 444 n.1.  Footnote 1 specifically cited *Sandvik*, thereby suggesting that the Third Circuit's void/voidable distinction remains partially intact, insofar as a court must still decide fraud-in-the-execution challenges—*void* arguments—before arbitration.  Such a caveat, although not explicit, would be consistent with the Supreme Court's prior acknowledgment in *AT&T Technologies Inc. v. Communications Workers of America* that

6

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." 475 U.S. 643, 648 (1986) (citations omitted)).

However, this reading puts Footnote 1 in tension with the Court's later categorical rejection of the void/voidable distinction. Moreover, *Buckeye* specifically responded to the argument that submitting *void* challenges to arbitrators permitted courts "to enforce an arbitration agreement in a contract that the arbitrator later finds to be void" by observing that "it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly valid." *Buckeye Check Cashing*, 546 U.S. at 448–49. Considering that *Buckeye Check Cashing* arose from a motion to compel arbitration, where respondents sought a judicial determination of the void-for-illegality argument, *id.* at 443, the Court must have been referring to a court's improper consideration of a matter reserved to the arbitrator when it spoke of "permit[ting] a court to deny effect to an arbitration provision."

The Courts of Appeals that have considered the matter since *Buckeye Cash Checking* have not provided a definitive solution to the Footnote 1 mystery in the context of a fraud-in-the-execution argument. *Compare Sleeper Farms v. Agway Inc.*, 506 F.3d 98, 103 (1st Cir. 2007) (rejecting a void-for-illegality argument, finding "[a]s a matter of federal law, the arbitration clause is unaffected even if the substance of the contract is otherwise void or voidable") (citation omitted) *with Rintin Corp. v. Domar, Ltd.*, 476 F.3d 1254, 1259 & n.3 (11th Cir. 2007) (noting that contract formation matters persist, even though *Buckeye Check Cashing* "deemed irrelevant" the void/voidable distinction, thereby suggesting that a fraud-in-the-execution argument might still warrant judicial review). At least one court in this District, in confirming an arbitration award on cross-motions to confirm/vacate the award, has found that *Buckeye Check Cashing*

7

requires a fraud-in-the-execution argument to be submitted to the arbitrator in the first instance. *N.J. Bldg. Laborers' Statewide Benefit Funds v. Mark Constr.*, No. 07-5934, 2008 WL 3833542, at *1–3 (D.N.J. Aug. 13, 2008). Although that court did not delve into the ramifications of *Buckeye Cash Checking* and Footnote 1 on the continuing vitality of *Sandvik*, this Court agrees that its conclusion is the most sensible approach in the aftermath of *Buckeye Cash Checking* where the party submits a broad fraud in the execution argument to defeat the entire CBA.

However, reading *Buckeye Cash Checking* to dispense with the void/voidable distinction does not necessitate the wholesale repudiation of *AT&T Technologies*' threshold requirement of an agreement to arbitrate. Courts may still inquire whether the parties completed a contract, void or not, containing an arbitration agreement. Here, Brady does not dispute that he signed the Short Form Agreement, and the Short Form Agreement unequivocally incorporates a CBA containing an agreement to submit all disputes arising thereunder to binding arbitration. There is no dispute that an agreement to arbitrate was *completed* when both parties signed the Short Form Agreement September 9, 2003.

To the extent that *Buckeye Cash Checking* disavows *Sandvik*'s void/voidable distinction and mandates submitting fraud-in-the-execution arguments to the arbitrator, Plaintiff's argument lacks a solid foundation. Brady's Verified Complaint challenges the CBA and Short Form Agreement in their entirety (Compl. at ¶ 37(1) (seeking declaratory judgment "that Plaintiff is not currently a party to any collective bargaining agreement or contract with Defendants")), as well as their contribution and arbitration provisions (*Id.* ¶ 37(2) (seeking declaratory judgment "that Plaintiff is not contractually obligated to make any contributions to the Defendants or participate

8

in arbitration pertaining to the same")).[2] The basis for these objections, what this Court construes as a fraud-in-the-execution argument, is Plaintiff's claim that the Union led it to believe that the Short Form Agreement was a "pre-hire agreement" extending CBA protections (including fund-contribution requirements) only to union labor. (*See id.* at ¶¶ 16–19.) As this Court previously held in its April 7 Order, this sort of argument raises exactly the sort of challenge to the entire agreement that *Buckeye Check Cashing* reserved for arbitration pursuant to the FAA. Brady's argument would not provide grounds for denying a motion to compel arbitration; accordingly, in the aftermath of arbitration, the same argument does not provide grounds for vacating the award.

### B. Plaintiff Fails to Establish a Genuine Issue of Fraud in the Execution

Even if *Sandvik*'s requirement that courts resolve fraud-in-the-execution challenges prior to ordering arbitration remains intact after *Buckeye Check Cashing*, Brady's Verified Complaint does not support a defense of fraud in the execution. On motions to compel arbitration, the summary judgment standard of Federal Rule of Civil Procedure 56(c) governs consideration of objections to the formation of an arbitration agreement. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 & n.9 (3d Cir. 1980). This Court sees no reason why the same standard should not apply when the same objections are raised in opposition to a motion to confirm an arbitration agreement. Accordingly, the Court must "give to the [party opposing the agreement] the benefit of all reasonable doubts and inferences that may arise." *Id.* at 54. "Only

---

[2]Notwithstanding Brady's request for declaratory relief with regards to the CBA's arbitration requirement, it does not appear that Brady understood that the CBA even included an arbitration provision at the time he signed the Short Form Agreement, because the Verified Complaint does not indicate that the parties even discussed arbitrability during negotiations. (*See* Compl. at ¶¶ 16–19.) Upon viewing the facts presented in Brady's Verified Complaint, it cannot be gainsaid that Brady challenges the validity of the arbitration provision as distinct from the entire contract.

when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986).

Our Circuit has repeatedly held that, in order "[t]o prevail on a defense of fraud in the execution, a party must show 'excusable ignorance of the contents of the writing signed.'" *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (quoting *Rozay's Transfer*, 791 F.2d at 774; U.C.C. § 3-305 cmt. 7). Generally, the Third Circuit has defined excusable ignorance to refer to situations "when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir. 1994) (quoting *Rozay's Transfer*, 791 F.2d at 774); U.C.C. § 3-305(2)(c); Restatement (Second) of Contracts § 163 (1981)). More specifically, the Third Circuit has suggested that excusable ignorance requires a showing that the resulting instrument is "radically different" from the instrument the defrauded party thought it was signing. *Agathos*, 977 F.2d at 1506 (citation omitted); *Connors*, 30 F.3d at 491 (citation omitted).

The Third Circuit distinguished between fraud-in-the-inducement (voidable) and fraud-in-the-execution (void) arguments in *Connors v. Fawn Mining Corporation*. That case involved the purchase of a closing coal mine in Saxonburg, Pennsylvania, which required that the prospective purchaser agree to be bound to a CBA as the mine workers' employer. The day before the mine was to be shut down, Fawn Mining, the prospective buyer, completed a signature page with the workers' union, signifying their agreement that the employer would be obligated to comply with a CBA. 30 F.3d at 486–87. Fawn Mining asserted that both parties agreed to

10

exempt it from making contributions to the 1950 Plan fund; hence, both parties expected that provision would be deleted from the CBA before formal execution and subsequent attachment to the signature page. *Id.* at 492. When the union fund later sued for delinquent contributions under the CBA, the final version of which included the contributions provision, Fawn Mining argued that "it had been affirmatively led by [the union] to believe that the agreement it was signing did not require it to contribute to the 1950 Plan at any time." *Id.* at 489. Our Circuit in *Connors* held that the circumstances presented a genuine issue of fraud in the execution that precluded summary judgment. *Id.* at 492–93.

      Although at first blush the facts in *Connors* bear a strong resemblance to Brady's allegations—the union's fraudulent misrepresentation led the employer to sign a one-page agreement incorporating a CBA without full knowledge of the contribution requirements—Brady's position differs starkly from the triable issue found in *Connors* in that Brady *knew* that the Short Form Agreement bound him to the CBA, and specifically the CBA's contribution requirements for the union workers that he hired. (*See* Compl. at ¶¶ 16, 21 (acknowledging that both parties intended hired union workers to be subject to the CBA, and that Brady paid fund contributions on behalf of the union labor that he hired).) Brady's misunderstanding regarding the contribution provisions was not whether the terms would be included, but whether those terms applied to all of his employees—a misunderstanding of scope. Likewise, Brady's confusion about the applicability of the arbitration clause, if he was even aware of the clause at all, concerned the scope of the clause. (*See* Pl.'s Br. at 8 (arguing that "no enforceable agreement between [Plaintiff] and Defendants, calling either for pension contributions or arbitration

11

Case 2:07-cv-05122-HAA-ES   Document 37   Filed 02/11/09   Page 12 of 18 PageID: 516

*pertaining to Plaintiff's employees*, was ever concluded . . . .") (emphasis added)).³ Furthermore, nowhere in its Verified Complaint does Plaintiff suggest that circumstances, or the Union, prevented him from reading the CBA. Plaintiff merely asserts that it never received the "Main Agreement." (Compl. at ¶ 23.)

These differences are important. Indeed, the *Connors* court did not base its decision solely on Fawn Mining's allegation of fraudulent misrepresentation. Rather, the court relied on the "significant time pressure" under which the parties signed the agreement—just one day before the mine's closure—and the continuing importance of the 1950 Plan provision throughout the parties' protracted negotiations. *Connors*, 30 F.3d at 492–93. In those circumstances, the inclusion of the term would result in a "radically different" contract, and the time pressures, coupled with the alleged "surreptitious[]" behavior of the union, created a genuine issue of excusable ignorance and, thus, fraud in the execution. *Id.* The Third Circuit's later decision in *Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098 (3d Cir. 1996) further demonstrates the circumstantial limitations of *Connors*. There, the court summarily rejected a fraud-in-the-execution defense where it was evident that the employer "had several opportunities to review the language of the agreement prior to its execution." *Id.* at 1108. "Had [the employer] reviewed the agreement, he would have found the alleged error in the document and this entire dispute could have been averted." *Id.*

Additional guidance comes from the Restatement (Second) of Contracts, which provides the proverbial examples of fraud in the execution and fraud in the inducement. For fraud in the

---

³If Brady was not aware of the CBA's arbitration requirement, it is because he did not read the CBA. Brady's Verified Complaint contains no allegations that the Union misrepresented whether or not the CBA included an arbitration clause.

execution, the Restatement provides:

> A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. It is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the *belief that it is the one he has read*. B's apparent manifestation of assent is not effective.

Restatement (Second) of Contracts § 163, illustration 2 (emphasis added). Meanwhile, for fraud in the inducement, the Restatement hypothesizes:

> A and B agree that A will buy a tract of land from B for $100,000 and will assume an existing mortgage of $50,000. In reducing the agreement to writing, A intentionally omits the provision for assumption but tells B that the writing correctly expresses their agreement. *B does not notice the omission* and is induced by A's statement to sign the writing. The misrepresentation is both fraudulent and material, and the contract is voidable by B.

*Id.* § 164, illustration 3 (emphasis added). These examples illustrate the implicit caveat emptor reasoning of the "excusable ignorance" distinction between fraud in the inducement and fraud in the execution. The contracting party that employs due diligence in reviewing the terms, but nevertheless is duped by a bait-and-switch, is found to have never entered into a contract due to fraud in the execution. Mere fraud is not enough.

Although Brady's argument entails fraudulent misrepresentation, it lacks the attenuating circumstances that made Fawn Mining's ignorance excusable in *Connors*. Viewing all facts and inferences in Brady's favor, the bare assertion that he never received the CBA, without more, does not establish a genuine issue of "excusable ignorance." Thus, this Court must conclude that Brady had a reasonable opportunity to learn the full scope of the CBA contribution and arbitration requirements, just as the employer in *Central Pennsylvania Teamsters Pension Fund*

did.  His failure to request, let alone read, the CBA cannot absolve him of his obligations under the arbitration agreement.  *Cf. Young v. Prudential Ins. Co. of Am., Inc.*, 688 A.2d 1069, 1077 (N.J. Super. App. Div. 1997) ("Failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.").  Furthermore, Brady's concession that he understood that the CBA entailed contribution requirements for union labor differentiates the CBA in this case from the "radically different" CBA in *Connors*.  Brady's ardent protestations that the parties intended a CBA with a narrower scope, and that, after-the-fact, the parties performed under the CBA as if it had a narrower scope, are of no moment in considering whether the parties completed an arbitration agreement.  Alas, this Court must conclude, as did another court in the Eastern District of New York in a similar arbitrability dispute, that "Plaintiff is simply trying to cloak a fraudulent inducement claim in the language of fraud in the execution."  *McCaddin v. Se. Marine Inc.*, 567 F. Supp. 2d 373, 381–82 (E.D.N.Y. 2008) (finding no genuine issue of fraud in the execution and compelling arbitration, where party claimed he could not read the contract "because he lost his eyeglasses"); *see also Down to Earth Landscaping v. N.J. Bldg. Laborers Dist. Council Local 595*, No. 06-578, 2006 WL 1373169, at *1, 3 (D.N.J. May 17, 2006) (Chesler, J.) (compelling arbitration because a similar, scope-based objection to a similar CBA presented a fraud in the inducement argument rather than a fraud in the execution argument).

      There is no doubt that the parties in this case completed a Short Form Agreement incorporating a CBA that included an arbitration agreement.  Plaintiff's argument, although couched in terms of fraud in the execution, does not disturb this fact.  Plaintiff's argument is really one of fraud in the inducement, and *Buckeye Cash Checking* reserves claims of fraud in the

14

inducement for arbitration.  Consequently, Plaintiff fails to present a cognizable basis for setting aside the arbitration award.

### III.    REVIEW OF ARBITRATION AWARD

Having determined that the parties in this case completed a valid arbitration agreement, thus dispensing with Brady's fraud-based jurisdictional argument, this Court now turns to the Fund's motion to confirm the arbitration award.  It is well established that judicial review of arbitration awards is extremely limited.  In the absence of fraud or concerns that the arbitrator has exceeded his authority, courts are confined to ensuring that the award derives its "essence" from the collective bargaining agreement.  *See, e.g.*, *United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers, Local Union No. 430*, 55 F.3d 138, 140–41 (3d Cir. 1995) (citations omitted); *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).

An award derives its essence from a CBA if "the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention."  *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 748 (3d Cir. 1990); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969).  "It is [] not the role of a court to correct factual or legal errors made by an arbitrator."  *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005).  In other words, "courts have no business overruling [an arbitration award] because their interpretation of the contract is different from [the arbitrator's interpretation]."  *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960); *see also United Parcel Serv.*, 55 F.3d at 141 ("[C]ourts are not authorized to reconsider the merits of an

15

arbitrator's award."). A court may only vacate an arbitration award "if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." *Brentwood*, 396 F.3d at 241 (quoting *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993) (internal quotation marks omitted)).

Cursory review of the December 16, 2007 award reveals that its essence is drawn from the CBA. The arbitrator determined that Brady was a "signatory to a Short Form Agreement . . . with the Union, incorporating the terms and conditions of [the Collective Bargaining Agreement by and between the Northern New Jersey Building Laborers' District Council, Central New Jersey Building Laborers' District Council, Southern New Jersey Building Laborers' District Council and the Building, Site and General Construction Contractors and Employers]." (Def.'s Mot. to Confirm, Ex. D at ¶ 1.) Paragraph 4 of the award properly identifies the CBA provisions, found in Article XIV, that obligate the employer to make fund contributions for covered employees. (*Id.* at ¶ 4.) The Arbitrator made a factual determination that Brady violated Article XIV of the CBA by "employ[ing] individuals covered by the terms of the [CBA] during the payroll period May 1, 2003 through December 31, 2005" and "failing to make its required contributions to the funds [during this time period]." (*Id.* at ¶¶ 3, 8.)

Pursuant to the CBA, an independent auditor was appointed to determine the extent of past-due contributions; from the audit, the arbitrator determined Brady was delinquent in the amount of $196,334.08. (*Id.* at ¶¶ 5, 8.) Citing Article XV of the CBA, the Arbitrator determined that Brady was liable for arbitration costs, interest, and reasonable attorneys fees, which the Arbitrator assessed as $800 (arbitrator's fee), $97,424.65 (interest), and $44,212.67 (attorneys' fees), respectively. (*Id.* at ¶¶ 11, 14.) Additionally, the Arbitrator assessed $39,938.10

in liquidated damages, for a total award of $378,038.22.[4]  (*Id.* at ¶ 14.)  From this Court's review of the record, the arbitrator's decisions roughly track the contract language; thus, the award as a whole derives its essence from the CBA.  At this point, more exacting scrutiny is not permitted.

At no time has Brady objected to any portion of the arbitration proceedings or award, aside from the argument this Court now rejects that the arbitrator lacked jurisdiction.  This Court sees no reason to vacate the arbitration award.  Accordingly, the Court will confirm the award.

This Court's decision to confirm the arbitration award simultaneously dispatches with the remaining claims in Brady's Verified Complaint, all of which seek declaratory relief of some form (declaratory judgment, injunctive relief, estoppel) from the contribution requirements of the CBA.

### IV.    CONCLUSION & ORDER

For the aforementioned reasons, it is hereby ORDERED:

1)   The Fund's motion (Civil No. 08-256, Doc. No. 2) is GRANTED, and that the Arbitration Award of December 16, 2007 is CONFIRMED;

2)   Brady shall cease and desist from violating the Trust Agreements concerning lack of payment to the Fund as directed by the arbitrator; and

3)   Brady shall make payment to the Fund in the amount of $378,038.22 as directed by the arbitrator.

---

[4] As the Court reads the figures provided by the arbitrator, the individual items awarded total $378,709.50, a sum that exceeds the award listed ($378,038.22) by $671.28.  However, presuming this Court's reading is correct, and there is an error on the face of the arbitration award, as noted above, this Court has no jurisdiction to correct mere factual errors once it determines that the award derives its essence from the CBA.  Consequently, bank error favors the Plaintiff.

17

Consequently, Plaintiff's motion (Doc. No. 33) for reconsideration is DENIED, and the remaining claims in Plaintiff's Verified Complaint are rendered MOOT. The Clerk shall mark these consolidated cases CLOSED.

Newark, New Jersey
Dated: February 11, 2009

                                              /s/ Harold A. Ackerman
                                              U.S.D.J.